Sam Kim [SBN 258467]
Yoonis Han [SBN 256151]
**VERUM LAW GROUP, APC**
360 N. Pacific Coast Highway, Suite 1025
El Segundo, CA 90245
Telephone: (424) 320-2000
Facsimile: (424) 221-5010
skim@verumlg.com

Attorneys for Plaintiff MIGUEL GUERRERO, and
all other similarly situated persons

***Additional Counsel Listed on Next Page

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MIGUEL GUERRERO, individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> UNITED STATES GYPSUM COMPANY, a Delaware corporation; and DOES 1-20, inclusive, <br><br> Defendants. | Case No. 3:21-cv-01502-RBM-JLB <br><br> **PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR ORDER GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT** <br><br> Judge: Hon. Ruth Bermudez Montenegro <br> Magistrate Judge: Hon. Jill L. Burkhardt <br> Courtroom: 2D <br><br> Hearing Date: December 15, 2022 <br> Time: 9:00 a.m. <br><br> Complaint Filed: April 29, 2021 <br> Trial Date: None Set |

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR ORDER GRANTING FINAL
APPROVAL OF CLASS ACTION SETTLEMENT

Anthony Choe [SBN 259129]
**LAW OFFICES OF ANTHONY CHOE**
3700 Wilshire Boulevard, Suite 260
Los Angeles, CA 90010
Telephone: (213) 788-4448
Facsimile: (213) 788-4450
anthony@choelawfirm.com

Attorneys for Plaintiff MIGUEL GUERRERO, and
all other similarly situated persons

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR ORDER GRANTING FINAL
APPROVAL OF CLASS ACTION SETTLEMENT

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE THAT on December 15, 2022, at 9:00 a.m., in Room 2D of the United States District Court for the Southern District of California, 221 West Broadway San Diego, CA 92101, Representative Plaintiff Miguel Guerrero ("Plaintiff"), and Plaintiff's Counsel will and hereby do move this Court for final approval of the proposed Stipulation, Settlement, and Release of Class Action and Private Attorneys General Act Claim ("Settlement" or "Settlement Agreement") with Defendant United States Gypsum Company ("Defendant").

Specifically, Plaintiff moves the Court pursuant to Rule 23 of the Federal Rules of Civil Procedure for an order finally approving the Settlement as fair, reasonable, and adequate. This Motion is made on the grounds that the Settlement is fair, adequate, and reasonable given the relative strengths and weaknesses of the claims and defenses; the risks, expense, complexity and likely duration of further litigation; the amount offered in settlement; the experience and views of counsel; and the public policy in favor of quieting litigation.

This Motion is based upon the accompanying (1) Memorandum of Points and Authorities, (2) the Declaration of Sam Kim, (3) the Declaration of Yoonis Han, (4) the previously filed Declaration of Miguel Guerrero on March 25, 2022 (Dkt. No. 25), (5) the Declaration of Kevin Lee; (6) the exhibits attached to the foregoing declarations, and such other oral arguments and documentary evidence as may be presented to the Court at the hearing of this Motion.

Dated:  November 17, 2022          **VERUM LAW GROUP, APC**

By:_____
          Sam Kim
          Yoonis Han
          Attorneys for Plaintiff Miguel Guerrero

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR ORDER GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT

# **TABLE OF CONTENTS**

I.  INTRODUCTION ........................................................................................... 1

II.  SUMMARY OF THE LITIGATION............................................................. 2

   a.  Procedural History ..................................................................................... 2

   b.  Discovery .................................................................................................... 3

   c.  ENE Conference and Mediation.................................................................. 4

   d.  Order Granting Preliminary Approval of Class Action Settlement .............. 4

III.  SUMMARY OF THE SETTLEMENT TERMS .......................................... 5

IV.  THE NOTICE AND SETTLEMENT ADMINISTRATOR PROCESS WAS COMPLETED PURSUANT TO THE COURT'S ORDER ................................. 8

V.  ARGUMENT.............................................................................................. 10

   a.  The Standard for Final Approval Has Been Met........................................ 10

   b.  Class Counsel Conducted a Thorough Investigation of the Factual and Legal Issues ............................................................................................... 12

   c.  The Settlement Was Achieved After Evaluating the Strengths of Plaintiff's Case and the Risks, Expense, Complexity, and Likely Duration of Further Litigation ................................................................................................... 13

   d.  The Settlement Was Reached Through Arm's-Length Bargaining in Which the Parties Were Represented by Experienced Counsel ................................... 15

   e.  The Class Has Responded Positively to the Settlement.............................. 16

   f.  The Proposed PAGA Settlement Is Reasonable ........................................ 17

VI.  CONCLUSION .......................................................................................... 18

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR ORDER GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT

# TABLE OF AUTHORITIES

**Cases**

*7-Eleven Owners for Fair Franchising v. Southland Corp.*, 85 Cal. App. 4th 1135, 1152-53 (2000) .................................................................. 16

*Churchill Village, LLC v. Gen. Elec.*, 361 F.3d 566 (9th Cir. 2004).................... 16

*Clesceri v. Beach City Investigations & Protective Servs.*, 2011 U.S. Dist. LEXIS 11676, *22 (C.D. Cal. 2011). ....................................................... 13

*D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir.2001)........................... 15

*Doty v. Costco Wholesale Corp.*, Case No. CV05-3241 FMC-JWJx ................. 17

*Gomez v. Amadeus Salon, Inc.*, Case No. BC392297........................................ 17

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026-27 (9th Cir.1998)..................... 11

*Hopson v. Hanesbrands Inc.*, 2009 U.S. Dist. LEXIS 33900, at *24 (N.D. Cal. Apr. 3, 2009)................................................................................. 17

*In re Apple Computer, Inc. Derivative Litig.*, 2008 U.S. Dist. LEXIS 108195 (N.D. Cal. Nov. 5, 2008) ................................................................. 15

*In re Volkswagon "Clean Diesel" Mktg., Sales Practices, &Prods. Liab. Litig.*, 2016 WL 4010049, at *14 (N.D. Cal. July 26, 2016) ......................................... 16

*Kullar v. Foot Locker Retail, Inc.*, 168 Cal. App. 4th 116, 129 (2008) .............. 13

*Lane v. Facebook, Inc.*, 2010 U.S. Dist. LEXIS 24762, *19 (N.D. Cal. 2010) ... 13

*Lim v. Victoria's Secret Stores, Inc.*, Case No. 04CC00213................................ 17

*Nordstrom Com. Cases*, 186 Cal. App. 4th 576, 579 (2010)............................... 17

*Palencia v. 99 Cents Only Stores*, No. 34-2010-00079619................................ 17

*Sorenson v. PetSmart, Inc.*, Case No. 2:06-CV-02674-JAM-DAD .................... 17

*Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003) .................................... 11

**State Rules**

Manual for Complex Litigation § 21.634 ......................................................... 10

Civil Rule 7.1 .................................................................................................... 5

v                     Case No. 3:21-cv-01502-RBM-JLB

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR ORDER GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT

Manual for Complex Litigation § 21.632 (4th ed. 2004) ..................................... 10

**State Statutes**

Labor Code § 202.7 ............................................................................. 3

California Code of Civil Procedure § 382 ........................................... 2

Labor Code § 203 ............................................................................ 4, 12

Labor Code § 226 ............................................................................ 3, 12

Labor Code § 2699 ......................................................................... 4, 18

Labor Code §§ 201 ............................................................................. 3

**Cal. Business and Professions Codes**

California Business & Professions Code § 17200 ............................... 3

**Federal Rules**

Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d). ............... 3

Fed. R. Civ. Proc. 23 .............................................................. 1, 10, 11

Rule 23 ............................................................................................ 11

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR ORDER GRANTING FINAL
APPROVAL OF CLASS ACTION SETTLEMENT

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.    INTRODUCTION

On June 23, 2022, the Court granted preliminary approval of the Stipulation, Settlement and Release of Class Action and Private Attorneys General Act Claims executed between Plaintiff Miguel Guerrero ("Plaintiff") and Defendant United States Gypsum Company ("Defendant") (collectively, Plaintiff and Defendant hereinafter referred to as the "Parties").    (See Order Granting Motion for Preliminary Approval of Class Action Settlement ["Preliminary Approval Order")], Dkt. No. 33).    After almost a year and half of litigation, Plaintiff now seeks final approval of this non-reversionary Settlement of $600,000.00 dollars for approximately 412 Settlement Class Members.    An objective evaluation of the Settlement confirms that the requirements of Fed. R. Civ. Proc. 23(e) have been satisfied. Further, the relief negotiated on behalf of the Class is fair, reasonable, and adequate in light of the risks of continued litigation, supporting Plaintiff's request that the Court grant an order finally approving the Settlement.

The Preliminary Approval Order approved distribution of the Notice of Class Action Settlement by Phoenix Settlement Administrators, the Settlement Administrator. (See Preliminary Approval Order, ¶ 8 (c), Dkt. No. 33) Class Members were given 45 days to opt out or object to the Settlement ("Response Deadline"). (See Exhibit A attached to the Declaration of Sam Kim ("Kim Decl.") ¶ 9, Stipulation, Settlement and Release of Class Action and Private Attorneys General Act Claims ("Settlement" or "Settlement Agreement") § I (HH).    Now that the Response Deadline has passed, Plaintiff is pleased to report the following: (1) none of the Notice of Class Action Settlement ("Notice") mailed to Class Members have been deemed undeliverable; (2) only two out of the 414 Class Members opted out of the Settlement; (3) zero Class Members objected to the Settlement; (4) the entire Net Settlement Amount will be disbursed to 412 Settlement Class Members;

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR ORDER GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT

and (5) the average payment to Settlement Class Members is approximately $469.14. (See Declaration of Kevin Lee Re: Notice and Settlement Administration in Support of Plaintiff's Motion for Final Approval of Class Action Settlement ("Lee Decl.") ¶¶ 6-10, and 14.

As discussed below, while Plaintiff is confident that his claims are certifiable and have merit, there are significant risks that the Court could deny certification and/or that Defendant could prevail on the merits.  The Settlement was negotiated by the Parties at arm's length with helpful guidance from Steve Rottman, Esq., an experienced and well-respected class action mediator.  Kim Decl., ¶¶ 10-11.  The relief offered by the Settlement is particularly impressive when viewed against the difficulties encountered by Plaintiff in this Action.  By resolving the dispute now rather than proceeding to trial, Settlement Class Members will not have to wait (potentially years) for relief, nor will they have to bear the risk of class certification being denied or of Defendant prevailing at or before trial.  Kim Decl., ¶ 12. Accordingly, given the Settlement's favorable terms and the manner in which these terms were negotiated and received by Class Members, Plaintiff respectfully requests that the Court grant this Motion for Order Granting Final Approval of Class Action Settlement, enter a judgment, and retain jurisdiction to enforce the Settlement.

## II.    SUMMARY OF THE LITIGATION

The Settlement aims to resolve a proposed class and representative action lawsuit against Defendant.

### a.  Procedural History

On April 29, 2021, Plaintiff filed a proposed class action, pursuant to California Code of Civil Procedure § 382, against Defendant in the San Diego Superior Court (Case No. 37-2021-000191113-CU-OE-CTL) alleging the following claims: 1) failure to pay all wages; 2) non-payment of overtime compensation; 3) failure to provide proper meal breaks; 4) failure to authorize and

proper rest breaks; 5) failure to properly maintain and submit itemized wage statements; 6) violation of Labor Code §§ 201 and 202.7; 7) failure to reimburse business expenses; and 8) violation of California Business & Professions Code § 17200 *et seq.* (the "Action"). Kim Decl., ¶ 13. On July 29, 2021, Plaintiff filed a First Amended Complaint ("FAC") adding a claim under the PAGA. *Id.*

On April 29, 2021, Plaintiff submitted his PAGA Notice to the LWDA. See Exhibit B, Kim Decl., ¶ 14. On October 25, 2021, Plaintiff submitted his Amended PAGA Notice to the LWDA. See Exhibit C, Kim Decl., ¶ 15. (collectively, "PAGA Notices").

On August 24, 2021, Defendant removed the Action to federal court, pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d). Kim Decl., ¶ 10; see Notice of Removal (Dkt. No. 1).

### b. Discovery

Prior to attending mediation, Plaintiff and Defendant engaged in an initial round of written discovery with each party producing responses and documents. Kim Decl., ¶ 17. Through discovery, Plaintiff sought, among other things, contact information for prospective class members, their time and pay records, and Defendant's policies and practices. *Id.* The Parties continued to meet and confer regarding ongoing discovery issues, including scheduling the depositions of Defendant's Person Most Qualified and Plaintiff, the production of requested documents, the use of a *Belaire* notice procedure to identify prospective class members, and production of a 10% representative sampling of time and pay records. Kim Decl., ¶ 18.

In addition, Plaintiff and Defendant also agreed to exchange information and documents informally, including: 1) the total number of non-exempt employees who worked for Defendant during the Class Period; 2) the total number of non-exempt employees currently employed by Defendant; 3) the total number of workweeks worked by all Settlement Class Members during the Labor Code § 226

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR ORDER GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT

period; 4) the total number of workweeks worked by all PAGA Group Members during the PAGA Period; 5) the total number of workweeks worked by all Settlement Class Members during the Labor Code § 203 period; 6) complete payroll and time keeping records for the Plaintiff; and 7) key code information for codes used in the wage statements provided to Settlement Class Members.  Kim Decl., ¶ 19.

### c.  ENE Conference and Mediation

On November 9, 2021, the Parties attended the ENE Conference with the Hon. Jill L. Burkhardt.  Kim Decl., ¶ 20.  During the ENE Conference, as well as before, the Parties exchanged their respective positions on the legal theories and claims in the Action.  *Id*.  While the Parties were unable to reach a resolution at the conference, the Parties continued settlement discussions, including an agreement to attend mediation.

On February 9, 2022, the Parties attended mediation with Steve Rottman, Esq., a well-respected mediator for wage and hour claims.  Kim Decl., ¶ 10.  Following a full-day of mediation, the Parties were able to reach a resolution, which included the material terms of the Settlement.  Kim Decl., ¶ 11.

Over the next month, the Parties continued to draft and negotiate the long-form Settlement, which was finalized and mutually executed on March 24, 2022 after resolving numerous disputes over the terms of the Settlement.  See Exhibit A attached to Kim Decl., ¶ 9, Settlement Agreement.

Lastly, Plaintiff submitted the Settlement to the LWDA pursuant to Labor Code § 2699 (1)(2) on March 24, 2022.  See Exhibit D, Kim Decl., ¶ 19.

### d.  Order Granting Preliminary Approval of Class Action Settlement

On March 23, 2020, Plaintiff filed his Motion for Preliminary Approval of Class Action Settlement, including declarations of Class Counsel in support thereof. (See Plaintiff's Notice of Motion and Motion for Preliminary Approval of Class Action Settlement, Dkt. No. 25.)

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR ORDER GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT

On June 17, 2022, Plaintiff's Motion for Preliminary Approval came on for hearing before the Honorable Ruth Bermudez Montenegro in Courtroom 2D. Kim Decl., ¶ 22. On June 23, 2022, the Court entered the Preliminary Approval Order, which, inter alia, provisionally certified the Class for settlement purposes, designated Plaintiff as the Class Representative, designated Plaintiff's Counsel as Class Counsel, authorized retention of Phoenix Settlement Administrators as the Settlement Administrator, approved the Notice of Class Action Settlement and proposed notice procedures, and set the Final Approval Hearing for December 15, 2022. Kim Decl., ¶ 23; see also Preliminary Approval Order, Dkt. No. 33.

The Preliminary Approval Order also set a deadline for Class Counsel to File Motion for Order Granting Final Approval and Entering Judgment within 120-days after the Preliminary Approval Date, or by October 21, 2022. Kim Decl., ¶ 24; see also Preliminary Approval Order, Dkt. No. 33.

Notwithstanding the October 21, 2022 deadline set by the Preliminary Approval Order, Class Counsel through his own mistake and error, calendared the deadline to file the Motion for Order Granting Final Approval for November 17, 2022 by incorrectly applying the 28-day rule under Civil Rule 7.1 (e). Kim Decl., ¶ 25. Class Counsel apologizes to the Court and all parties for this mistake and error. *Id.*

## III.   SUMMARY OF THE SETTLEMENT TERMS

Plaintiff's Counsel believes that the Settlement submitted to this Court for final approval is a fair and reasonable result for the Settlement Class. In exchange for a narrowly-tailored release, limited to "any and all claims, causes of action, or legal theories that are asserted in, arising from, or reasonably related to the factual allegations made in the Action," the Settlement commits Defendant to pay up to $600,000.00 ("Gross Settlement Amount"), subject to credit for Pick-Up Stix Payments previously paid by Defendant to 352 Settlement Class Members. Settlement § III (A) and (C). This is a non-reversionary Settlement. Settlement §

I (Q).

The Net Settlement Amount is the Gross Settlement Amount, less the Service Award, General Release Payment, PAGA Payment, Class Counsel Costs Award, Class Counsel Fees Award, Settlement Administration Costs, Employer Taxes, Pick-Up Stix Payments, and Pick-Up Stix Adjustment Payments. Settlement § I (S).

The Service Award is the Court approved payment of $5,000.00 paid to Plaintiff as the Class Representative, in addition to his Individual Settlement Payment and General Release Payment, in recognition of his efforts and risks in assisting with the prosecution of the Action.  Settlement § I (FF).

The General Release Payment is the Court approved payment of $10,000.00 to Plaintiff in exchange for his execution of a general release of known and unknown claims and waiver pursuant to California Civil Code § 1542.  Settlement § I (P).

The PAGA Payment is the $10,000.00 allocated to penalties under the PAGA, of which $7,500.00 shall be paid by the Settlement Administrator directly to the LWDA; and the remaining $2,500.00 shall be distributed to PAGA Group Members based on Compensable PAGA Pay Periods.  Settlement § I (X).

The Class Counsel Costs Award is the expenses and costs incurred by Class Counsel in connection with litigation of the Action, which are not to exceed $17,000.00 and are paid from the Gross Settlement Amount.  Settlement § I (D). Class Counsel incurred $14,570.88 in costs.  See Exhibit E, Kim Decl., ¶ 54.

The Class Counsel Fees Award is the attorneys' fees for Class Counsel's litigation and resolution of the Action, which are not to exceed 30% of the Gross Settlement Amount, or $180,000.00 and are paid from the Gross Settlement Amount.  Settlement § I (E).

The Settlement Administration Costs are the costs payable from the Gross Settlement Amount to the Settlement Administrator for administering this Settlement, which are not to exceed $9,000.00. Settlement § I (II), and § III (O)(5).

The Employer Taxes are Defendant's share of any employer payroll taxes and other required employer withholdings due on the Individual Settlement Payments, and Pick-Up Stix Adjustment Payments, including, but not limited to, Defendant's FICA and FUTA contributions. Settlement § I (O). The employer's payroll taxes are estimated at $10,445.25. Lee Decl., ¶ 13.

The Pick-Up Stix Payments is the $167,700.00 already paid by Defendant for Pick-Up Stix settlement agreements entered into with 352 Settlement Class Members to settle the Action prior to this Settlement, and for which Defendant shall receive credit as part of this Settlement. Settlement § I (CC).

The Pick-Up Stix Adjustment Payments is the payment of $5,000.00 set aside to give to employees who were not already paid by Defendant for signing Pick-Up Stix settlement agreements. Settlement § I (BB). The Pick-Up Stix Adjustment Payments will be subtracted from the Gross Settlement Value, and will be set aside for and will go to employees who did not sign a Pick-Up Stix settlement agreement, to account for a credit of settlement funds that did not go to them. *Id.*

As of the Effective Date, in exchange for the consideration set forth in the Settlement, the claims settled, fully released and forever discharged by the Settlement Class Members, including Plaintiff, constitute any and all claims, causes of action, or legal theories that are asserted in, arising from, or reasonably related to the factual allegations made in the Action during the Class Settlement Period. ("Released Class Claims").[1] Settlement § III (C). In addition, as of the Effective Date, in exchange for the PAGA Payment set forth in the Settlement, the claims settled, fully released and forever discharged by Plaintiff as a representative of the State of California and on behalf of the LWDA, constitute any and all claims,

---

[1] The full scope of the Released Class Claims is listed in the Settlement in § III (C).

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR ORDER GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT

causes of action, or legal theories that are asserted in, arising from, or reasonably related to the factual allegations made in the Action, and PAGA Notices, during the Released PAGA Period. ("Released PAGA Claims").[2]  Settlement § III (D). PAGA Group Members will be bound by the Judgment entered by the Court as to the Released PAGA Claims.  *Id.*

Only Plaintiff will agree to a general release of known and unknown claims and waiver pursuant to California Civil Code § 1542.  Settlement § I (P).

Finally, based on the terms of the Settlement, the Net Settlement Amount is $193,283.87.  Lee Decl., ¶ 13.  This amount does not include the credit for Pick Up Stix Payments paid to Settlement Class Members in the amount of $167,700.00. *Id.*  By adding the Net Settlement Amount to the Pick-Up Stix Payments and dividing that total amount by the 412 Settlement Class Members, the average recovery is $876.17.  Kim Decl., ¶ 26.

## IV.    THE NOTICE AND SETTLEMENT ADMINISTRATOR PROCESS WAS COMPLETED PURSUANT TO THE COURT'S ORDER

As authorized by the Court's Preliminary Approval Order, the Parties engaged Phoenix Settlement Administrators ("Phoenix") to provide settlement administration services. (Preliminary Approval Order ¶ 7., Dkt. No. 33).  Phoenix Settlement was responsible for:   (i) preparing, translating, printing, and mailing the *Notice of Class Action Settlement* ("Notice"); (ii) responding to inquiries from Class Members; (iii) calculating the number of weeks each Class Member worked during the period from April 29, 2017 to June 3, 2022 ("Class Settlement Period") and the number of Compensable PAGA Pay Periods each PAGA Group Member worked during the time period from April 29, 2020 to June 3, 2022 ("PAGA Settlement Period"); (iv) determining the validity of letters indicating a request to be excluded from the Class Settlement ("Requests for Exclusion"), written

---

[2] The full scope of the Released PAGA Claims is listed in the Settlement in § III (D).

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR ORDER GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT

objections to the Class Settlement ("Objections"), and/or dispute regarding the number of Compensable Workweeks submitted by Settlement Class Members; (v) calculating the Net Settlement Amount and the Individual Settlement Shares to Class Members; (vi) calculating and issuing the Individual Settlement Payments and distributing them to Settlement Class Members and PAGA Payments to PAGA Group Members; (vii) issuing the payment to Class Counsel for attorneys' fees and costs, the Service Award and General Release Payment to Plaintiff Guerrero, and the employer/employee payroll taxes to the appropriate taxing authorities; and (viii) such other tasks as set forth in the Settlement Agreement or as the Parties mutually agree or as the Court orders. Lee Decl., ¶ 2.

The Notice summarized the principal terms, provided Class Members with an estimate of how much they would receive if the Settlement is finally approved, and advised Class Members how to opt-out of the Settlement and how to object to the Settlement, including disputing the estimated Individual Settlement Payments. See Exhibit A, Lee Decl., ¶ 5, Notice.  Separately, Defendant's Counsel provided Phoenix with the Employee List that contained names, last known mailing addresses, Social Security numbers, dates of employment, and Pick-Up Stix information for each Class Member ("Class List") during the Class Period.  Lee Decl., ¶ 3.

On August 3, 2022, Phoenix conducted a National Change of Address ("NCOA") search in an attempt to update the class list of addresses as accurately as possible.  Lee Decl., ¶ 4.

On August 3, 2022, Phoenix mailed the Notice via U.S. first class mail, in English and Spanish, to all four hundred fourteen (414) Class Members on the Employee List.  Lee Decl., ¶ 5.  Based on the date of mailing, Class Members had until September 19, 2022 to submit objections, disputes, and/or requests for Exclusions.  Lee Decl., ¶¶ 8-10.  Only two of the 414 Class Members opted out of the Settlement, and no objections to the Settlement were received by Phoenix.  Lee

Decl., ¶¶ 5, 8, 9.  This results in a 99% participation rate for this Settlement.  Lee Decl., ¶ 11.  Additionally, none of the Notices were deemed undeliverable.  Lee Decl., ¶ 7.  Any checks that are not cashed within 180 days of issuance, including any accrued interest that has not been distributed pursuant to the Order of this Court, will be distributed by the Settlement Administrator to the California State Controller's Office Unclaimed Property Fund in the name of the Settlement Class Member.  Settlement § III O (1)(e).

## V.    ARGUMENT

### a.  The Standard for Final Approval Has Been Met

A class action may only be settled, dismissed, or compromised with the Court's approval. Fed. R. Civ. Proc. 23(e). The process for court approval of a class action settlement is comprised of three principal stages.

(1)  Preliminary Approval. The proposed settlement agreement is preliminarily reviewed by the Court for fairness, adequacy, and reasonableness. If the Court believes the settlement falls within the range of reasonableness, such that proceeding to a formal fairness hearing is warranted, the Court orders notice of the settlement disseminated to the class. See Manual for Complex Litigation § 21.632 (4th ed. 2004).

(2) Notice Procedures: Notice of the settlement is disseminated to the class, giving class members an opportunity to object to the settlement's terms or preserve their right to bring an individual action by opting out of the settlement. See id. § 21.633.

(3) Final Approval. A formal fairness or final approval hearing is held by the Court, at which time class members can be heard regarding the settlement and further evidence and arguments concerning the fairness, adequacy, and reasonableness of the settlement is presented. Following the hearing, the Court decides whether to approve the settlement and enter a final order and judgment. See id. § 21.634.

The first two steps have been completed. (See generally; Preliminary Approval Order, Lee Decl.) The Court has preliminarily reviewed the proposed settlement for fairness and found it to be within the range of reasonableness meriting court approval. (See Preliminary Approval Order, Dkt. No. 33.) In addition, the Administrator notified Class Members of the proposed settlement and the upcoming fairness hearing as directed by the Court. (See generally; Lee Decl.) Plaintiff now requests the Court grant final approval of the proposed Settlement.

The decision whether to approve the proposed Settlement is committed to the sound discretion of the trial judge, and will not be overturned except upon a strong showing of a clear abuse of discretion. *Hanlon v. Chrysler Corp*., 150 F.3d 1011, 1026-27 (9th Cir.1998).   Rule 23(e) of the Fed. R. Civ. Proc. requires that the court find a class settlement to be fair, reasonable and adequate before entering final approval. Courts balance several factors in determining whether a settlement is fair, adequate and reasonable, in compliance with Fed. R. Civ. Proc. 23 (a), such as "the strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement." *Staton v. Boeing Co*., 327 F.3d 938, 959 (9th Cir. 2003) (internal citation and quotation marks omitted).

These factors, discussed below, confirm that the Settlement is fair, reasonable, and adequate for Class Members. The Settlement provides considerable value, and Class Members need not bear the risk and delay associated with trial proceedings to obtain these benefits.  Kim Decl., 12.  Further, the Settlement has been met with substantial support from 412 Class Members as evidenced by the 99% participation rate. Lee Decl. ¶ 11.

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR ORDER GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT

### b. Class Counsel Conducted a Thorough Investigation of the Factual and Legal Issues

The Settlement is the product of informed negotiations following extensive investigation by Class Counsel. Since filing the Action on April 29, 2021, Plaintiff's Counsel has worked diligently to prosecute the class claims, engaged in formal and informal discovery with numerous lengthy discussions with Defendant's counsel, and pushed the case efficiently towards mediation, all of which ultimately yielded the instant Settlement. Kim Decl., ¶¶ 27-33. In addition, Plaintiff's Counsel worked through numerous hurdles in this case, including the Pick-Up Stix Agreements, and other arguments raised by Defendant about the merits of this case. Kim Decl., ¶ 34. Plaintiff's Counsel also propounded written discovery including document requests and special interrogatories, and met and conferred with Defendant on numerous occasions to resolve disputes. Kim Decl., ¶ 34. Through discovery and lengthy meet and confer sessions, Plaintiff's counsel obtained documents revealing the company's policies and procedures as well as time and payroll records. Kim Decl., ¶ 35. These records provided sufficient information to calculate Defendant's potential exposure at this stage. *Id*.

In addition, Plaintiff and Defendant also agreed to exchange information and documents informally, including: 1) the total number of non-exempt employees who worked for Defendant during the Class Period; 2) the total number of non-exempt employees currently employed by Defendant; 3) the total number of workweeks worked by all Settlement Class Members during the Labor Code § 226 period; 4) the total number of workweeks worked by all PAGA Group Members during the PAGA Period; 5) the total number of workweeks worked by all Settlement Class Members during the Labor Code § 203 period; 6) complete payroll and time keeping records for the Plaintiff; and 7) key code information for codes used in the wage statements provided to Settlement Class Members. Kim Decl., ¶ 36.

Based on this information, Plaintiff's Counsel conducted a thorough analysis of the claims, analyzed Defendant's employment policies and practices, spoke to Defendant's counsel on many occasions regarding the legal theories, exchanged research and analysis on these theories, and drafted the mediation brief before participating in the full-day mediation session. Kim Decl., ¶ 37. The extensive document and data exchange allowed Class Counsel to appreciate the strengths and weaknesses of the alleged claims against the benefits of the proposed Settlement. *Id.*

### c. The Settlement Was Achieved After Evaluating the Strengths of Plaintiff's Case and the Risks, Expense, Complexity, and Likely Duration of Further Litigation

In considering the complexity, expense, and likely duration of the litigation, courts weigh the benefits of the settlement against the expense and delay involved in achieving an equivalent or even more favorable result at trial. *Lane v. Facebook, Inc.*, 2010 U.S. Dist. LEXIS 24762, *19 (N.D. Cal. 2010); see *Kullar v. Foot Locker Retail, Inc*., 168 Cal. App. 4th 116, 129 (2008) (The trial court "bears the responsibility to ensure that the recovery represents a reasonable compromise, given the magnitude and apparent merit of the claims being released, discounted by the risks and expenses of attempting to establish and collect on those claims by pursuing the litigation."). However, "[j]udicial policy favors settlement in class actions, as substantial resources can be saved by avoiding the time, cost, and rigors of formal litigation." *Clesceri v. Beach City Investigations & Protective Servs*., 2011 U.S. Dist. LEXIS 11676, *22 (C.D. Cal. 2011).

Employment cases (including wage and hour cases) can be expensive and time consuming to prosecute. That this is a class action further amplifies the economies of time, effort and expense achieved by this Settlement. Based on review of documentary evidence and data produced by Defendant both formally and informally in the course of litigation and settlement negotiations, Plaintiff's

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR ORDER GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT

Counsel assessed the potential value of the class claims being released by the proposed Settlement (and explanation of the factors bearing on the amount of the compromise). See Kim Decl., ¶¶ 38-46.  Based on these calculations and factors (and Additional Risk Factors, set forth below), the total exposure if Plaintiff was successful on all claims at trial is $9,812,957.00 (excluding penalties under the PAGA).  Kim Decl., ¶ 46.  However, the realistic exposure for all claims is $981,295.70.  *Id.*  Accordingly, the Gross Settlement Amount of $600,000.00 therefore represents approximately 61.14% of Plaintiff's reasonably forecasted recovery, while avoiding the further expense and risk of proceeding with class certification and trial.  *Id.*  For the PAGA Claim, based on the contested issues in this case, Plaintiff discounted the PAGA exposure by 97%, resulting in an estimated realistic exposure of $265,155.00.  Kim Decl., ¶ 47.  The details of the exposure analysis and discounts for the PAGA Claim is further detailed in Kim Decl., ¶ 47.  In addition to the factors outlined above, Plaintiff also weighed the following risk factors:

- The great discretion afforded to trial courts in electing to grant or deny class certification, meaning it is entirely possible that this Court would deny certification of the proposed classes, resulting in no recovery whatsoever for the unnamed class members;
- Defendant's likely argument common issues do not predominate based on the wide variation in class members' job duties and their option to voluntarily waive meal and rest breaks;
- Defendant's likely arguments that the named plaintiff's claims are not typical of those of the class and that he is not an adequate class representative;
- Even if the Court certified the class, the possibility that it would find that Defendant satisfied its duty to make breaks available. See *Brinker*, 53 Cal.4th 1004;
- Defendant's likely argument that, even if found liable for rest period violations, the class lacked sufficient evidence to legally establish their damages; and
- Defendant's likely argument that Plaintiff's estimate of the maximum damages available to the class is vastly overstated and does not comport with

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR ORDER GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT

the actual damages suffered by class members ("Additional Risk Factors"). Kim Decl., ¶ 48.

When weighed against the tremendous uncertainty of further litigation and the potential for the class to receive nothing or wait through years of litigation and/or appeals, class members are far better served by the proposed Settlement than further and protracted litigation.

### d.  The Settlement Was Reached Through Arm's-Length Bargaining in Which the Parties Were Represented by Experienced Counsel

As discussed above, the Settlement is the result of arm's-length negotiations by experienced counsel and with the aid of an experienced mediator, Steven Rottman.  Kim Decl., ¶ 10.  Despite adversarial negotiations at mediation, the Parties were able to reach a resolution at mediation.  *Id*.  Plaintiff's Counsel credit the effectiveness of mediation to the Parties' Counsel's comprehensive understanding of the disputed issues and their ability to convey the strengths and weaknesses of the claims and defenses in light of the risks of lengthy, uncertain, and expensive litigation.  *Id*.  After the material terms were agreed upon, the Parties negotiated the long-form Settlement Agreement.  *Id*.  During this time, the Parties were confronted with many disputed issues, including the scope of the release and whether to remand.  *Id*.  Ultimately, the disputes were resolved and the Settlement Agreement was finalized and mutually executed on March 24, 2022.  See Exhibit A, Kim Decl., ¶ 9.  A mediator's participation weighs considerably against any inference of a collusive settlement. See *In re Apple Computer, Inc. Derivative Litig.*, 2008 U.S. Dist. LEXIS 108195 (N.D. Cal. Nov. 5, 2008); *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir.2001) (a "mediator's involvement in pre-certification settlement negotiations helps to ensure that the proceedings were free of collusion and undue pressure."). At all times, the Parties' negotiations were adversarial and non-collusive.  Kim Decl., ¶ 50.

As this Settlement is the "result of arm's-length negotiations by experienced Class Counsel [it] is entitled to 'an initial presumption of fairness.'" *In re*

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR ORDER GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT

*Volkswagon "Clean Diesel" Mktg., Sales Practices, &Prods. Liab. Litig.*, 2016 WL 4010049, at *14 (N.D. Cal. July 26, 2016) (internal citation omitted). There is no reason to doubt Class Counsel's experience, knowledge or commitment. Class Counsel are highly experienced and knowledgeable regarding complex federal and state wage and hour class actions, such as this action. Kim Decl., ¶¶ 3-8; see also Declaration of Yoonis Han ("Han Decl.") ¶¶ 3-9. Indeed, Class Counsel have handled many wage and hour cases on behalf of employees alleging claims just like those raised in this lawsuit. Kim Decl., ¶¶ 5, 8; see also Han Decl., ¶ 9. In sum, Class Counsel fully committed its resources to representing the Class, have the skill and expertise to do it properly, and will continue to do so whether or not the Settlement is approved. Kim Decl., ¶ 51. Class Counsel believe the Settlement provides a substantial recovery for the Class, obtaining a $600,000.00 settlement. Kim Decl., ¶ 52. Accordingly, Class Counsel obtained a favorable resolution on behalf of the Class based on their prior experience and investigation of this case, and therefore request that the Court grant final approval of the Settlement.

### e. The Class Has Responded Positively to the Settlement

The Settlement Class' response demonstrates its support for this Settlement. Only two Class Member opted out and zero Class Members objected to the Settlement. Lee Decl., ¶¶ 8-9. Settlement Class Members will share the entire Net Settlement Amount and will receive an average payment of $469.14, with the highest payment estimated at $1,139.65, and the lowest at $8.57. Lee Decl., ¶ 13. A low number of opt-outs and objections is a strong indicator that a settlement is fair and reasonable. See, e.g., *Churchill Village, LLC v. Gen. Elec.*, 361 F.3d 566 (9th Cir. 2004) (affirming settlement approval where 45 of approximately 90,000 notified class members objected and 500 opted out); *7-Eleven Owners for Fair Franchising v. Southland Corp.*, 85 Cal. App. 4th 1135, 1152-53 (2000) (class response favorable where "[a] mere 80 of the 5,454 national class members elected to opt out [(1.5% of the entire Class)] and . . . [a] total of nine members . . . objected

to the settlement"). The Class Members' response – both in the extremely low rate of opt-outs and lack of objectors – compares favorably to those cases and warrants final approval.   Likewise, the average Settlement Class Member recovery of $469.14 (not including Pick Up Stix Payments paid to Settlement Class Members) compares favorably to other wage and hour class action settlements for similar claims on behalf of hourly employees. See, e.g., *Palencia v. 99 Cents Only Stores*, No. 34-2010-00079619 (Sacramento County Super. Ct.) (average net recovery of approximately $80); *Doty v. Costco Wholesale Corp*., Case No. CV05-3241 FMC-JWJx (C.D. Cal. May 14, 2007) (average net recovery of approximately $65); *Sorenson v. PetSmart, Inc*., Case No. 2:06-CV-02674-JAM-DAD (E.D. Cal.) (average net recovery of approximately $60); *Lim v. Victoria's Secret Stores, Inc*., Case No. 04CC00213 (Orange County Super. Ct.) (average net recovery of approximately $35); *Gomez v. Amadeus Salon, Inc*., Case No. BC392297 (L.A. Super. Ct.) (average net recovery of approximately $20). Accordingly, the high participation rate, the low number of opt-outs, and no objections by Class Members supports a finding that the Settlement is fair and reasonable.

### f.  The Proposed PAGA Settlement Is Reasonable

Pursuant to the Settlement Agreement, $10,000 of the Gross Settlement Amount Fund will be allocated to the resolution of the PAGA claim, of which 75% ($7,500) will be paid directly to the LWDA, and the remaining 25% ($2,500) will be distributed to PAGA Group Members based on Compensable PAGA Pay Periods.   Settlement Agreement § I (X).  This result was reached after good-faith negotiation between the Parties. Kim Decl., ¶ 52.   Where PAGA penalties are negotiated in good faith and "there is no indication that [the] amount was the result of self-interest at the expense of other Class Members," such amounts are generally considered reasonable. *Hopson v. Hanesbrands Inc*., 2009 U.S. Dist. LEXIS 33900, at *24 (N.D. Cal. Apr. 3, 2009); see also *Nordstrom Com. Cases*, 186 Cal. App. 4th 576, 579 (2010) ("[T]rial court did not abuse its discretion in approving a

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR ORDER GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT

settlement which does not allocate any damages to the PAGA claims."). The PAGA component of the Settlement is the product of arm's-length negotiations between counsel who are well versed in the intricacies of PAGA litigation and, more importantly, wage and hour employment law. Kim Decl., ¶¶ 3-8; Han Decl., ¶¶ 3-9. Class Counsel conducted extensive formal and informal investigation and discovery into the claims at issue and have assessed both the strengths and weaknesses of the claims and the risks of continued litigation. Kim Decl., ¶ 37. The PAGA allocation is sufficient to satisfy the PAGA purposes of punishment and deterrence, especially in light of the possibility that Plaintiff's might not prevail on proving their claims or that the Court could reduce the PAGA award in its discretion. Kim Decl., ¶ 47. Based on the foregoing, Class Counsel strongly believe that the PAGA component of the Settlement appropriately reflects the relative strengths of the Parties' respective claims and defenses, as well as the substantial risks presented in continuing the litigation. Kim Decl., ¶ 53. Pursuant to Labor Code § 2699(l)(2), Plaintiff's Counsel submitted a copy of the Settlement to the LWDA on March 24, 2022. See Exhibit D, Kim Decl., ¶ 21. As such, the Court should approve the PAGA allocation based on the finding that the allocation is the result of good faith, arm's-length negotiation, and therefore fair, adequate, and reasonable.

## VI.    CONCLUSION

Based on all of the above, Plaintiff respectfully requests that the Court grant final approval of the Settlement.


Dated:  November 17, 2022          **VERUM LAW GROUP, APC**


By:  _____

          Sam Kim
          Yoonis Han
          Attorneys for Plaintiff Miguel Guerrero

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR ORDER GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT