**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MIGUEL GUERRERO, on behalf of himself and all others similarly situated,<br><br>                                    Plaintiff,<br><br>v.<br><br>UNITED STATES GYPSUM COMPANY, a Delaware corporation; and DOES 1–20, inclusive,<br><br>                                    Defendants. | Case No.: 3:21-cv-01502-RBM-JLB<br><br>**ORDER:**<br><br>**(1) GRANTING MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT (Doc. 35)**<br><br>**(2) GRANTING MOTION FOR ATTORNEYS' FEES COSTS AND SERVICE AWARD (Doc. 35-1)**<br><br>**[Doc. 35]** |

## I.      INTRODUCTION

On November 17, 2022, Plaintiff Miguel Guerrero ("Plaintiff") filed a Motion for Order Granting Final Approval of Class Action Settlement ("Motion for Final Approval") (Doc. 35) and a Motion for Attorneys' Fees, Costs, and Service Award ("Motion for Attorneys' Fees") (Doc. 35–1). The undersigned held a hearing on December 22, 2022. The Court has reviewed the Stipulation, Settlement and Release of Class Action and Private Attorneys General Claims (the "Settlement"), the docket, and the applicable law. For the reasons discussed below, Plaintiff's Motion for Final Approval and Motion for Attorneys'

1 | Fees are **GRANTED**.

## II. BACKGROUND

On April 29, 2021, Plaintiff filed a putative class action pursuant to California Code of Civil Procedure Section 382 against Defendant United States Gypsum Company ("Defendant") in the Superior Court of the State of California, County of San Diego. (Doc. 1 at 2.) Defendant filed an answer on June 1, 2021. (*Id.*) Plaintiff filed a first amended complaint ("FAC") on July 29, 2021. (*Id.*) Plaintiff alleges he was Defendant's employee from January 2016 through April 20, 2021, and Plaintiff filed this putative class action "on behalf of himself and all non-nonexempt employees who are or were employed by Defendant in California during the four years preceding the filing of the complaint." (*Id.* at 3.) Defendant filed an answer to the FAC on August 4, 2021. (Doc. 1 at 3.) The FAC includes the following claims: (1) failure to pay all wages, (2) non-payment of overtime compensation, (3) failure to provide proper meal breaks, (4) failure to authorize and permit proper rest breaks, (5) failure to properly maintain and submit itemized wage statements, (6) violation of Labor Code §§ 201 and 202.7, (7) failure to reimburse business expenses, (8) violation of California Business and Professions Code § 17200, and (9) violation of California Labor Code Private Attorney General Act. (Doc. 1–4.)

On February 9, 2022, Plaintiff and Defendant (collectively, the "Parties") attended mediation with Steve Rottman, "a well-respected mediator for wage and hour claims." (Doc. 25 at 13.) After a full day of mediation, the Parties were able to reach a resolution. (*Id.*) The Parties continued to draft and negotiate the Settlement over the next month, and it was finalized and mutually executed on March 24, 2022. (Doc. 25 at 13; *see* Doc. 25–7.) Also on March 24, 2022, Plaintiff submitted the Settlement to the Labor and Workforce Development Agency ("LWDA") pursuant to Labor Code § 2699(1)(2). (Doc. 25 at 13; Doc. 35 at 10.)

On March 25, 2022, Plaintiff filed a Motion for Preliminary Approval of Class Action Settlement ("Motion for Preliminary Approval"). (Doc. 25.) Defendant did not file an opposition. The undersigned held a hearing for the Motion for Preliminary Approval

on June 17, 2022 and issued an order granting the Motion for Preliminary Approval on June 23, 2022 ("Preliminary Approval Order"). (Doc. 33.) The Preliminary Approval Order provisionally certified the class for settlement purposes, designated Plaintiff as the Class Representative, designated Plaintiff's counsel as Class Counsel, authorized retention of Phoenix Settlement Administrators as the Settlement Administrator, approved the Notice of Class Action Settlement and proposed notice procedures. (*See* Doc. 33.) Plaintiff subsequently filed the instant Motion for Final Approval and Motion for Attorneys' Fees on November 17, 2022. (Docs. 35, 35–1.)

### III.   SUMMARY OF SETTLEMENT TERMS

The proposed settlement class includes "all current and former non-exempt employees employed by Defendant in the State of California during the Class Settlement Period" ("Settlement Class" or "Settlement Class Members"). (Doc. 35–2 at 34.) The settlement class period is from April 29, 2017 through June 3, 2022. (*Id.* at 29.)

The deadline to opt-out or object to the Settlement fell on September 19, 2022. (Doc. 35 at 15; Doc. 35–4 at 4.) Out of the 414 Settlement Class Members, two opted out of the Settlement, and there have been no objections to the Settlement. (Doc. 35 at 7; Doc. 35–4 at 4.) Moreover, none of the notices were deemed undeliverable. (*Id.*) This results in a 99% participation rate for the Settlement. (Doc. 35 at 16.)

The basic terms of the Settlement include the following:

1. Defendant to pay up to $600,000.00 to establish the Gross Settlement Amount, subject to credit for Pick-Up Stix Payments previously paid by Defendant to 352 Settlement Class Members.
2. The Net Settlement Amount is the Gross Settlement Amount, less the Service Award, General Release Payment, California Private Attorneys General Act of 2004 ("PAGA") Payment, Class Counsel Costs Award, Class Counsel Fees Award, Settlement Administration Costs, Employer Taxes, Pick-Up Stix Payments, and Pick-Up Stix Adjustment Payments.

///

3. The Class Representative Service Award is the Court approved payment of $5,000 paid to Plaintiff for his time, effort and risk in bringing and prosecuting the action.

4. The General Release Payment is the Court approved payment of $10,000.00 to Plaintiff in exchange for his execution of a general release of known and unknown claims and waiver pursuant to California Civil Code § 1542.

5. The PAGA Payment is the $10,000.00 allocated to penalties under the PAGA, of which $7,500.00 shall be paid by the Settlement Administrator directly to the LWDA; and the remaining $2,500.00 shall be distributed to PAGA Group Members based on Compensable PAGA Pay Periods.

6. The Class Counsel Costs Award is the expenses and costs incurred by Class Counsel in connection with litigation of the Action, which are not to exceed $17,000.00 and are paid from the Gross Settlement Amount.

7. The Class Counsel Fees Award is the attorneys' fees for Class Counsel's litigation and resolution of the Action, which are not to exceed 30% of the Gross Settlement Amount, or $180,000.00 and are paid from the Gross Settlement Amount.

8. The Settlement Administration Costs are the costs payable from the Gross Settlement Amount to the Settlement Administrator for administering this Settlement, which are not to exceed $9,000.00.

9. The Employer Taxes are Defendant's share of any employer payroll taxes and other required employer withholdings due on the Individual Settlement Payments, and Pick-Up Stix Adjustment Payments, which are estimated at $10,445.25.

10. The Pick-Up Stix Payments is the $167,700.00 already paid by Defendant for Pick-Up Stix settlement agreements entered into with 352 Settlement Class Members to settle the action prior to this Settlement, and for which Defendant shall receive credit as part of this Settlement.  The Pick-Up Stix Adjustment Payments is the payment of $5,000.00 set aside to give to employees who were not already paid by Defendant for signing Pick-Up Stix settlement agreements.

(Doc. 35 at 11–14.)

## IV.     LEGAL STANDARD

A class action may not be settled and have judgment entered without court approval. FED. R. CIV. P. 23(e).  Rule 23(e) settlement approval proceeds in three steps: (1) preliminary approval of the settlement; (2) notice of the settlement to class members; and (3) a final fairness hearing at which class members may be heard, and at which evidence and argument regarding the settlement may be considered. *Murillo v. Pac. Gas & Elec. Co.*, 266 F.R.D. 468, 473 (E.D. Cal. 2010).

The Ninth Circuit maintains a "strong judicial policy that favors settlement" of class actions. *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992); *see also Clesceri v. Beach City Investigations & Protective Servs., Inc.*, No. CV-10-3873-JST RZX, 2011 WL 320998, at *7 (C.D. Cal. Jan. 27, 2011) ("[j]udicial policy favors settlement in class actions, as substantial resources can be saved by avoiding the time, cost, and rigors of formal litigation").  The district court's decision to approve a settlement will not be overturned except upon a strong showing of a clear abuse of discretion. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026–27.

Federal Rule of Civil Procedure ("Rule" or "Rules") 23(e) "requires the district court to determine whether a proposed settlement is fundamentally fair, adequate, and reasonable." *Hanlon*, 150 F.3d at 1026 (citing *Class Plaintiffs*, 955 F.2d at 1276); *see also* FED. R. CIV. P. 23(e).  Where the "parties reach a settlement agreement prior to class certification, courts must peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement." *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003).  In these situations, settlement approval "requires a higher standard of fairness and a more probing inquiry than may normally be required under Rule 23(e)." *Dennis v. Kellogg Co.*, 697 F.3d 858, 864 (9th Cir. 2012).

The Ninth Circuit notes that "[i]t is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness." *Hanlon*, 150 F.3d at 1026.  A court may not "delete, modify or substitute certain provisions" of the settlement; rather, "[t]he settlement must stand or fall in its entirety." *Id.*  Courts "must be particularly

vigilant not only for explicit collusion, but also for more subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations." *Dennis*, 697 F.3d at 864 (quoting *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011)).

In determining whether a proposed settlement is "fair, reasonable, and adequate" under Rule 23(e), courts considers several factors including: (1) the strength of the plaintiff's case, (2) the risk, expense, complexity, and likely duration of further litigation, (3) the risk of maintaining class-action status throughout the trial, (4) the amount offered in settlement, (5) the extent of discovery completed and the stage of the proceedings, (6) the experience and views of counsel, (7) the presence of a governmental participant, and (8) and the reaction of the class members to the proposed settlement. *Hanlon*, 150 F.3d at 1026; *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004); *see also Staton*, 327 F.3d at 959. The Court need only consider some of these factors—namely, those designed to protect absentees. *See Molski v. Gleich*, 318 F.3d 937, 953 (9th Cir. 2003).

## V. DISCUSSION

A. Motion for Final Approval

### a. Preliminary Approval of Class Action Settlement

As an initial matter, the Court issued the Preliminary Approval Order on June 23, 2022. (Doc. 33.) The Court found class certification under Rules 23(a) and 23(b)(3) appropriate for the reasons outlined in the Preliminary Approval Order (Doc. 33). *See* FED. R. CIV. P. 23(a) & (b)(3). The Court also found "the Settlement is fair, reasonable and adequate." (Doc. 33 at 11); *see also* FED. R. CIV. P. 23(e). In doing so, the Court made an initial fairness determination examining whether Plaintiff and his counsel adequately represent the Settlement Class, whether the Settlement is a result of arm's length negotiation, the costs, risks, and delay of trial and appeal, and whether compensation to the Settlement Class was relative to Defendant's exposure. (*See* Doc. 33.) The Court found these factors weighed in favor of preliminarily approving the settlement. (*Id.* at 11.) As

such, the Court directed the Parties to proceed with providing proper notice to Settlement Class Members and set a date for the required final approval hearing under Rule 23(e). (Doc. 33 at 13–16.)

### b. Notice to Settlement Class Members

The Court's Preliminary Approval Order approved the form and manner of notice to the Settlement Class Members. (*See* Doc. 33 at 13–14.) The Court now finds the method for distributing class notice was executed as previously detailed in its Preliminary Approval Order. (*See* Doc. 35–4 at 4, 9–22.) The Settlement Administrator conducted a National Change of Address search in an attempt to update the class list of addresses as accurately as possible. (Doc. 35 at 15.) Moreover, the Settlement Administrator distributed notice via U.S. first class mail, in English and Spanish, to 414 Settlement Class Members. (Doc. 35–4 at 4.) Settlement Class Members had until September 19, 2022 to submit objections, disputes, and/or requests for exclusion. (*Id.*) As of November 16, 2022, no notices had been returned, no notices were considered undeliverable, and only two individuals requested exclusion. (*Id.*) The Court finds the notice to the Settlement Class Members satisfies due process, and the notice procedures were "the best notice practicable under the circumstances." *Silber v. Mabon*, 18 F.3d 1449, 1452–54 (9th Cir. 1994) (quoting *In re Victor Techs. Sec. Litig.*, 792 F.2d 862, 865 (9th Cir. 1986)) (holding that Rule 23's "best notice practicable" requirement is satisfied by "what notice is reasonably certain to inform the absent members of the plaintiff class"); *see also* FED. R. CIV. P. 23(c)(2)(B).

### c. Final Approval of Class Action Settlement

As previously noted, the Court made an initial fairness determination in its Preliminary Approval Order. (*See* Doc. 33.) The Court again finds the following: (1) Class Counsel adequately represents the interests of the class and conducted a thorough investigation; (2) the Settlement was reached through arm's length negotiation in which a private mediator was involved, and the Parties were represented by experienced counsel; (3) the Settlement was achieved after evaluating the strengths of Plaintiff's case as well as the risks, expense, complexity, and likely duration of further litigation; (4) the relief

provided for the Settlement Class is adequate, and (5) the Settlement treats Settlement Class Members equitably relative to each other.  (*See id.*)

Now, after Settlement Class Members have been notified of the Settlement and have had an opportunity to express their reactions, the Court examines the reaction to the Settlement.  No objections to the Settlement have been filed, no notices have been returned, and only two individuals requested exclusion.  (*See* Doc. 35 at 15; Doc. 35–4 at 4.)  Thus, in addition to those factors considered by the Court in its Preliminary Approval Order, the Court finds this remaining factor supports approving the Settlement.

Accordingly, because the Settlement is fair and the Settlement Administrator executed the notice program previously approved by the Court, the Court finds final approval of the Settlement is warranted.  Therefore, Plaintiff's Motion for Final Approval is **GRANTED**.

B.   Motion for Attorneys' Fees

In conjunction with the Motion for Final Approval, Plaintiff also filed a Motion for Attorneys' Fees.  (Doc. 35–1.)  In the Motion for Attorneys' Fees, Plaintiff requests the Court enter an order: "(1) awarding Class Counsel's attorneys' fee of $180,000; (2) awarding Class Counsel's reasonable litigation costs and expenses of $14,570.88; (3) awarding Plaintiff the Service Award in the amount of $5,000 and the General Release Payment in the amount of $10,000; and (4) awarding settlement administration costs of $9,000 to the Settlement Administrator."  (*Id.* at 10.)

    **a.**    **Attorneys' Fees and Costs**

Plaintiff seeks "payment to Class Counsel for attorneys' fees in the amount of $180,000 and litigation expenses in the amount of $14,570.88."  (*Id.* at 3, 10.)

"While attorneys' fees and costs may be awarded in a certified class action where so authorized by law or the parties' agreement . . . courts have an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount."  *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d at 941.  "Where a settlement produces a common fund for the benefit of the entire class, courts

have discretion to employ either the lodestar method or the percentage-of-recovery method." *Id.* at 942. Under the percentage-of-recovery method, "the court simply awards the attorneys a percentage of the fund sufficient to provide class counsel with a reasonable fee." *Hanlon*, 150 F.3d at 1029; *see also Kim v. Allison*, 8 F.4th 1170, 1181 (9th Cir. 2021). Typically, courts calculate 25% of the fund as a "benchmark" for a reasonable fee award. *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d at 942. "The lodestar figure is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation (as supported by adequate documentation) by a reasonable hourly rate for the region and for the experience of the lawyer." *Id.* at 941 (citing *Staton*, 327 F.3d at 965)).

       *i.*  *Attorneys' Fees*

Here, "Plaintiff seeks final approval of Class Counsel's attorneys' fees of 30% of the Gross Settlement Amount of $600,000, a common fund established for the benefit and distribution to Settlement Class Members." (Doc. 35–1 at 13.) This amounts to $180,000.00. (*Id.* at 14.) Plaintiff explains that "the negotiated fees reflect an arms'-length compromise that was reached after a full day mediation session with Steve Rottman, a well-regarded mediator of wage and hour class actions, who proposed the principal terms of this class action settlement." (*Id.* at 15.) Moreover, "the fee amount is part of an overall settlement that the parties accepted after taking into account risks to both sides, and the result is a non-collusive agreement that provides substantial benefits to Settlement Class Members as well as reasonable fees to counsel that assumed substantial risk in prosecuting this case." (*Id.*) Plaintiff notes that Class Counsel's requested attorneys' fees can be justified under the percentage-of-recovery method, or the lodestar method. (*Id.* at 16, 23.)

       (a)  <u>Percentage-of-Recovery Method</u>

Plaintiff asserts that, "[h]ere, the request for attorneys' fees in the amount of 30% of the common fund falls within the range of acceptable attorneys' fees in Ninth Circuit cases." (*Id.* at 17.) While the Ninth Circuit has established a "benchmark" figure of 25% of the settlement fund as a reasonable fee award, the exact percentage awarded varies, and

fee awards often exceed that benchmark. (*Id.* at 16); *see In re Omnivision Technologies, Inc.*, 559 F. Supp. 2d 1036, 1047 (N.D. Cal. 2008) ("in most common fund cases, the award exceeds [the 25%] benchmark"); *see also In re Heritage Bond Litig.*, No. 02-ML-1475 DT, 2005 WL 1594403, at *19 (C.D. Cal. June 10, 2005) ("[c]ourts in the Ninth Circuit have awarded attorney fees in amounts greater than the twenty-five percent (25%) 'benchmark percentage'"); *see, e.g., In re Mego Fin. Corp. Sec. Litig.,* 213 F.3d 454, 460 (9th Cir.2000) (affirming award of fees equal to one-third of total recovery). Moreover, courts may consider the following factors when determining whether the benchmark percentage should be adjusted: (1) the result obtained for the class; (2) the effort expended by counsel; (3) counsel's experience; (4) counsel's skill; (5) the complexity of the issues; (6) the risks of non-payment assumed by counsel; (7) the reaction of the class; and (8) comparison with counsel's lodestar. *In re Heritage Bond Litig.*, 2005 WL 1594403, at *18.

In examining the above factors, the Court finds adjusting the benchmark percentage is warranted. Class Counsel negotiated an agreement in which Settlement Class Members will share the entire Net Settlement Amount and will receive an average payment of $469.14, with the highest payment estimated at $1,139.65 and the lowest at $8.57. (*See* Doc. 35 at 22; Doc. 35–1 at 18.) "Considering that Class Members here earned an average of $22.36 per hour, the average recovery (including the Pick-Up Stix Payment) equals pay for over 39 hours of work." (Doc. 35–1 at 18.) Additionally, "[t]his matter had been pending for a year and a half, and Class Counsel performed substantial work and investigation leading up to the Parties' negotiation of the Settlement." (*Id.* at 19.) Class Counsel has "considerable experience settling wage and hour class actions" and "had to conduct extensive research and demonstrate advanced skill in presenting their arguments to convince Defendant it faced a significant risk." (*Id.* at 20.) Lastly, Class Counsel faces heightened risk because this action was undertaken on a contingent basis. (*Id.* at 21); *see In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1300–01 (9th Cir. 1994) (citing *Skelton v. General Motors Corp.,* 860 F.2d 250, 254 (7th Cir.1988)) ("in the common fund context, attorneys whose compensation depends on their winning the case,

must make up in compensation in the cases they win for the lack of compensation in the cases they lose"); *see also Barbosa v. Cargill Meat Sols. Corp.*, 297 F.R.D. 431, 449 (E.D. Cal. 2013) (explaining the action was taken on a contingency fee basis "and, as such, Class Counsel invested time, effort, and money with no guarantee of recovery . . . where recovery is uncertain, an award of one-third of the common fund as attorneys' fees has been found to be appropriate").

While the percentage of recovery method appears to be a reasonable calculation of attorneys' fees, the Court will cross-check this method with the lodestar method. *See In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d at 944 (noting that even when one method "may be a perfectly appropriate method of fee calculation, we have also encouraged courts to guard against an unreasonable result by cross-checking their calculations against a second method").

(b)     Lodestar Method

As stated, the lodestar method involves multiplying the number of hours the prevailing party reasonable expended on the litigation by a reasonable hourly rate. *Staton*, 327 F.3d at 965. The resulting amount will be considered "presumptively reasonable," but "the court may adjust it upward or downward by an appropriate positive or negative multiplier reflecting a host of 'reasonableness' factors" including the quality of the representation, the benefit obtained for the class, the complexity of the issues, and the risk of nonpayment. *In re Bluetooth*, 654 F.3d at 941–42; *see also In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d at 1301 (holding that "district courts have discretion to use risk multipliers to enhance the lodestar in common fund cases"); *Nichols v. City of Taft*, 155 Cal. App. 4th 1233, 1240 (2007) ("application of a lodestar multiplier is *discretionary*; that is, it is based on the exercise of the court's discretion after consideration of the relevant factors in a particular case").

In this action, Class Counsel includes Sam Kim and Yoonis Han, both of which have an hourly rate of $600.00. (Doc. 35–1 at 24.) Sam Kim has thirteen years of experience, and Yoonis Han has fourteen years of experience. (*Id.*) "Class Counsel have submitted

detailed itemized timesheets attesting to their efforts to prosecute this action, including descriptions of the tasks performed, the time spent on those tasks, and the hourly rates of each of the attorneys performing those tasks." (*Id.*) The itemized timesheets represent a total of 263.90 hours worked over the almost year and a half this matter has been pending. (*Id.* at 23.) Thus, Plaintiff states that "Class Counsel's requested attorneys' fees can be justified under the lodestar method with applying a multiplier of 1.14." (*Id.*); *see, e.g.*, *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1051 (9th Cir. 2002) (upholding a lodestar multiplier cross-check showing a multiplier of 3.65); *Kelly v. Wengler*, 822 F.3d 1085, 1093, 1105 (9th Cir. 2016) (affirming lodestar multipliers of 2.0 and 1.3). Further, Plaintiff notes that "[t]heir practice is limited exclusively to plaintiff's-side employment litigation, and they focus on representing employees in wage and hour class action matters such as this one." (*Id.* at 24.) "They have litigated numerous wage and hour class actions and have been appointed class counsel or co-class counsel in dozens of those cases, representing hundreds of employees" and "[t]he requested fees and hourly rates are reasonable and commensurate with their skill and experience." (*Id.*)

The Court finds the requested fees and hourly rates are reasonable in light of Class Counsels' experience. *See Blum v. Stenson*, 465 U.S. 886, 896 n.11 (1984) (explaining courts examine whether "requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation"); *see also Drenckhahn v. Costco Wholesale Corp.*, No. 2:08-CV-01408-JHN-SS, 2012 WL 12952720, at *4 (C.D. Cal. May 4, 2012) (finding "hourly billing rates ranging from $450 to $515 for associates and $600 to $750 for partners are reasonable in a 'straightforward wage-and-hour litigation' in this district"); *Moreno v. Beacon Roofing Supply, Inc.*, No. 19CV185-GPC(LL), 2020 WL 3960481, at *8 (S.D. Cal. July 13, 2020) (applying lodestar calculation in wage and hour putative class action resulting in settlement and finding reasonable an hourly rate of $742 for attorney with 18 years of experience in complex class actions); *Vasquez v. Kraft Heinz Foods Co.*, No. 3:16-CV-2749-WQH-

BLM, 2020 WL 1550234, at *7 (S.D. Cal. Apr. 1, 2020) (finding rates of $650 for an attorney with 13 years of experience reasonable).

Accordingly, the Court concludes that Class Counsels' attorneys' fees request is reasonable under either calculation method based on the result obtained for the class, quality of representation, the quality of the settlement, and the contingent risk.

>  ii. *Litigation Expenses*

Plaintiff also requests litigation costs and expenses on behalf of Class Counsel in the amount of $14,570.88. (Doc. 35–1 at 25.) Plaintiff asserts that Class Counsel incurred $14,570.88 in costs and expenses, which is a fair and reasonable amount and that "[a]ll of these costs were necessary, litigation-related, and reasonably incurred in the prosecution of this case." (Doc. 35–1 at 25; *see* Doc. 35–2 at 22.)

Rule 23(h) provides that "[i]n a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." FED. R. CIV. P. 23(h); *see Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 391 (1970); *Staton*, 327 F.3d at 974–75. Pursuant to the Settlement, Class Counsel may seek reimbursement of reasonable costs not to exceed $17,000.00. (Doc. 35 at 12.) In light of the foregoing, the Court approves litigation expenses in the amount of $14,570.88.

In conclusion, the Court finds the requested attorneys' fees and costs reasonable. *See In re M.D.C. Holdings Sec. Litig.*, No. CV89-0090 E (M), 1990 WL 454747, at *4 (S.D. Cal. Aug. 30, 1990) ("[b]ecause this Court believes the parties should be encouraged to settle all their disputes as part of the settlement . . . including the amount of the fee . . . if the agreed-to fee falls within a range of reasonableness, it should be approved as part of the negotiated settlement"). As such, Class Counsel may receive attorneys' fees in the amount of $180,000.00 and litigation expenses in the amount of $14,570.88.

>  b. **Class Representative Service Award**

Plaintiff requests a $5,000 Service Award for his time and effort in pursuing this action. (Doc. 35–1 at 29); *see Cellphone Termination Fee Cases*, 186 Cal. App. 4th 1380,

1394 (2010) ("a class representative is entitled to a fee in a California class action"). Plaintiff also seeks a $10,000 General Release Payment. (Doc. 35–1 at 29.)

Service payments "compensate class representatives for work done on behalf of the class, [and] to make up for the financial or reputational risk undertaken in bringing the action." *Cellphone Termination Fee Cases*, 186 Cal. App. 4th at 1394. Plaintiffs "should be compensated for the expense or risk they have incurred in conferring a benefit on other members of the class." *Clark v. Am. Residential Services LLC*, 175 Cal. App. 4th 785, 806 (2009). Factors to be considered in granting a service award include: (1) the risk to the class representative in commencing suit, both financial and otherwise; (2) the notoriety and personal difficulties encountered by the class representative; (3) the amount of time and effort expended by the class representative; (4) the duration of the litigation and; (5) the personal benefit (or lack thereof) enjoyed by the class representative as a result of the litigation. *Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995).

Plaintiff states the risks in commencing this suit were significant as "Plaintiff could have been responsible for Defendant's costs if the case was not successfully concluded in their favor." (Doc. 35–1 at 26.) Moreover, "as a former employee of Defendant, Plaintiff placed his future employment prospects in peril by becoming a class representative." (*Id.*) Plaintiff also assumed "reputational risk that may impact his ability to find employment in the near and distant future." (*Id.* at 27.) The Court finds Plaintiff did assume risk by being the named class representative in this action.

Regarding the amount of time and effort expended by the class representative, the Court notes this action was filed on April 29, 2021, and Plaintiff explains that since that time he has:

> [A]ssisted Plaintiff's Counsel with investigation of the class claims by, among other things, gathering relevant information and documents for investigation and discovery, participating in numerous meetings and telephone conferences to discuss Defendant's policies and practices and the experiences of Defendant's employees as they relate to the policies at issue in this case, attending the early neutral conference, answering discovery requests, and further reviewing and discussing the Settlement.

(*Id.*)  Accordingly, the Court finds that a $5,000 Service Award is warranted.  Regarding the General Release Payment, Plaintiff states that, in exchange for $10,000, he will execute general release of known and unknown claims and waiver pursuant to California Civil Code § 1542.  (Doc. 35 at 14; Doc. 35–1 at 28–29.)  The Court also finds this amount reasonable under the circumstances and concludes Plaintiff is entitled to a $10,000 General Release Payment.

### c. Settlement Administrator Costs

Plaintiff requests reimbursement of the Settlement Administrator's costs, "which were incurred pursuant to the Parties' agreement and the Court's Preliminary Approval Order."  (Doc. 35–1 at 29.)  The Settlement Administrator "has complied with the requirements to mail the class notice to 414 Class Members and track responses, and will distribute the checks after final approval, along with other duties."  (*Id.*)  As such, Plaintiff states "the Court should permit Phoenix Settlement Administrators to recover the fees and costs it charged in the amount of [$]9,000 to perform its duties in this case."  (*Id.*)

The Court finds the notice procedure afforded adequate protections to Settlement Class Members and provides the basis for the Court to make an informed decision regarding approval of the Settlement based on the responses of the Settlement Class Members.  Moreover, the request is reasonable, and the Court hereby approves the Settlement Administrator's costs in the amount of $9,000.

For the foregoing reasons, Plaintiff's Motion for Attorneys' Fees is **GRANTED**.

## VI. <u>CONCLUSION</u>

For the reasons stated in this Order as well as in the Court's Preliminary Approval Order, Plaintiff's Motion for Final Approval and Motion for Attorneys' Fees are **GRANTED**.  Accordingly, the Court **ORDERS** as follows:

1. The Settlement and the definition of words and terms contained therein are incorporated by reference in this Order. The terms of this Court's Preliminary Approval Order are also incorporated by reference in this Order.
2. This Court has jurisdiction over the subject matter of this litigation and over all

     Parties to this litigation, including all members of the Settlement Class certified for settlement purposes in this Court's Preliminary Approval Order: all current and former non-exempt employees employed by Defendant in the State of California during the period from April 29, 2017 through June 3, 2022. (*See* Doc. 33 at 3, 12.) The PAGA Group Members bound by this Judgment include "all non-exempt employees employed by Defendant in the State of California at any time between April 29, 2020 to June 3, 2022." (*See id.* at 12.)

3. A total of two requests for exclusion were received: Eldon Hoffner and Neiba Jimenez. The Court hereby excludes the two individuals from the Settlement Class as not bound by the final judgment in this action.

4. The Court hereby finds that the Settlement is the product of arm's length settlement negotiations between Plaintiff, Class Counsel and Defendant.

5. The Court hereby finds and concludes that Class Notice was disseminated to the Settlement Class in accordance with the terms set forth in the Settlement, and that the Class Notice and its dissemination were in compliance with this Court's Preliminary Approval Order.

6. The Court further finds and concludes that the Class Notice set forth in the Settlement fully satisfies Rule 23 and the requirements of due process, was the best notice practicable under the circumstances, provided individual notice to the Settlement Class who could be identified through reasonable effort, and support the Court's exercise of jurisdiction over the Settlement Class as contemplated in the Settlement and this Order.

7. This Court hereby finds and concludes that the notice provided by the Phoenix Settlement Administrators, the Settlement Administrator, to the appropriate state and federal officials pursuant to 28 U.S.C. § 1715(b) fully satisfied the requirements of that statute.

8. The Court hereby finally approves the Settlement contemplated thereby, and finds that the terms constitute, in all respects, a fair, reasonable, and adequate settlement

as to all Settlement Class Members in accordance with Rule 23 and directs its consummation pursuant to its terms and conditions.

9. This Court hereby dismisses this action with prejudice, without costs to any party, except as expressly provided for in the Settlement.

10. Upon final approval (including, without limitation, the exhaustion of any judicial review, or requests for judicial review, from this final judgment and Order), Plaintiff and each and every one of the Settlement Class Members unconditionally, fully, and finally releases and forever discharges the Released Parties from the Released Class Claims.

11. Upon final approval (including, without limitation, the exhaustion of any judicial review, or requests for judicial review, from this final judgment and Order), Plaintiff as a representative of the State of California and on behalf of the LWDA unconditionally, fully, and finally releases and forever discharges the Released Parties from the Released PAGA Claims.  PAGA Group Members will be bound to the Judgment entered by the Court as to the Released PAGA Claims.

12. The Settlement (including, without limitation, its exhibits) and any and all negotiations, documents, and discussions associated with it, shall not be deemed or construed to be an admission or evidence of any violation of a statute, law, rule, regulation or principle of common law or equity, of any liability or wrongdoing, or of the truth of any of the claims asserted by Plaintiff in the action, and evidence relating to the Settlement shall not be discoverable or used, directly or indirectly, in any way, whether in the Action or in any other action or proceeding, except for purposes of enforcing the terms and conditions of the Settlement, the Preliminary Approval Order, and/or this Order.

13. If for any reason the Settlement terminates or final approval does not occur, then certification of the Settlement Class shall be deemed vacated.  In such an event, the certification of the Settlement Class for settlement purposes shall not be considered as a factor in connection with any subsequent class certification issues, and the

      Parties shall return to the status quo ante in the action, without prejudice to the right of any of the Parties to assert any right or position that could have been asserted if the Settlement had never been reached or proposed to the Court.

14. The Court finally approves Verum Law Group, APC, as adequate counsel and approves Class Counsel's application for $180,000.00 in attorneys' fees and $14,570.88 in costs.

15. The Court finally approves Miguel Guerrero as an adequate Class Representative and approves his Service Award in the amount of $5,000.00 and General Release Payment in the amount of $10,000.00.

16. The Court approves the payment to the LWDA.

17. The Court approves the payment to the Settlement Administrator in the amount of $9,000.00.

18. Finding that there is no just reason for delay, the Court orders that this Final Judgment and Order of dismissal shall constitute a final judgment pursuant to Rule 54. The clerk of the Court is directed to enter this Order on the docket forthwith.

**IT IS SO ORDERED.**

DATE: December 30, 2022

                                            HON. RUTH BERMUDEZ MONTENEGRO
                                            UNITED STATES DISTRICT JUDGE